UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CARLA K.,[1] | : | Case No. 3:23-cv-290 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff Carla K. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record. (Doc. #7).

**I.   Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Plaintiff protectively applied for benefits on March 31, 2021,[3] alleging disability beginning February 16, 2017, due to several impairments, including West Nile Encephalitis, severe cognitive impairments, emotional and behavioral changes, chronic fatigue, migraines, anxiety, depression, PTSD, high blood pressure, and thyroid disease. (Doc. #7-6, *PageID* #301). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a telephone hearing before Administrative Law Judge (ALJ) Stuart Adkins on August 1, 2022. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1420. He reached the following main conclusions:

Step 1: Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of February 16, 2017, through her date last insured of September 30, 2019.

Step 2: Through the date last insured, she had the following severe impairments: residuals of West Nile Virus, migraines, occipital neuralgia, anxiety, depression, and posttraumatic stress disorder (PTSD).

Step 3: Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Through the date last insured, her residual functional capacity (RFC), or the most she could have done despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "medium work … subject to the following limitations: (1) never climbing ladders, ropes, or scaffolds; (2) no work around hazards such as unprotected heights or dangerous machinery; (3) no driving of automotive equipment; (4) indoor

---

[3] Plaintiff previously filed for benefits on October 14, 2014. That application was denied by administrative decision on June 26, 2019. (Doc. #7-3, *PageID* #s 95-110). Plaintiff's request for review by the Appeals Council was denied on April 30, 2020. *Id.* at 119-23.

|  |  |
|---|---|
|  | work; (5) no concentrated exposure to loud noise; (6) performing unskilled, simple, repetitive tasks; (7) occasional contact with coworkers and supervisors; (8) no public contact; (9) no fast-paced production work or jobs which involve strict production quotas; (10) very little, if any, change in the job duties or the work routine from one day to the next; and (11) no occupational exposure to alcohol." |
|  | Through the date last insured, she was unable to perform any past relevant work. |
| Step 5: | Through the date last insured, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. |

(Doc. #7-2, *PageID* #s 44-55). Based on these findings, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, from June 27, 2019, the earliest possible date for a potential finding of disability, through September 30, 2019, the … date last insured." *Id.* at 55.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 40-56), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.     Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.   Discussion**

In her Statement of Errors, Plaintiff asserts that the ALJ erred by using the wrong legal standard, thus creating an unwarranted additional procedural burden for her to overcome. (Doc. #8, *PageID* #s 865-75). In response, the Commissioner maintains that ALJ Adkins properly evaluated Plaintiff's current application with a "fresh review" by considering the subsequently submitted medical records and opinion evidence. (Doc. #10, *PageID* #s 882-87).

  **A.   *Drummond,* AR 98-4(6), and *Earley***

In *Drummond*, the Sixth Circuit held that the principles of *res judicata* apply to both disability applicants and the Commissioner in Social Security cases. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997). Specifically, the *Drummond* Court found that, absent evidence of "changed circumstances" relating to an applicant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842. In response to *Drummond*, the Social

4

Security Administration subsequently issued Acquiescence Ruling ("AR") 98-4(6), which provides:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (Soc. Sec. Admin. June 1, 1998).

Thereafter, the Sixth Circuit clarified the scope of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). In *Earley,* the Sixth Circuit explained that *res judicata* only applies if an applicant files a subsequent application for the same period of disability that was rejected in the prior decision. *Id.* at 933. The Sixth Circuit pointed out that *Drummond* was never intended to extend *res judicata* to foreclose review of a new application for a new period of time, reasoning that "[a]ny earlier proceeding that found or rejected the onset of disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Id.* Rather, in cases where disability is alleged for a distinct period of time, the application is entitled to a "fresh look." *Id.* This, of course, is not to say that a subsequent ALJ cannot consider a prior ALJ's decision. Indeed, in the absence of new and additional evidence, the subsequent ALJ may treat the prior ALJ's findings as "legitimate, albeit not binding, consideration in reviewing a second application." *Id.* However, if the second application "introduces no new evidence or very little new evidence," the applicant "should not have high expectations about success." *Id.* "What's past likely will be precedent in that setting - as indeed it should be in a system designed to apply

5

the law consistently to similarly situated individuals." *Id.* at 933-934. In sum, the Sixth Circuit held, "[f]resh review is not blind review." *Id.* at 934.

Plaintiff previously filed an application for benefits, which was ultimately denied by ALJ Gregory Kenyon on June 26, 2019. (Doc. #7-3, *PageID* #s 95-110). Specifically, ALJ Kenyon determined that Plaintiff was not disabled between August 12, 2012, and the date of his decision on June 26, 2019. On March 31, 2021, Plaintiff protectively filed the instant application, alleging disability beginning February 16, 2016. Thus, Plaintiff's instant application sought in part to relitigate a period of alleged disability on which ALJ Kenyon had already rendered a decision. Therefore, for the portion of alleged disability that was previously adjudicated through June 26, 2019, administrative *res judicata* applied. In other words, ALJ Kenyon's RFC findings were binding through June 26, 2019. It is only for the unadjudicated time—meaning June 27, 2019, through Plaintiff's date last insured, September 30, 2019—that ALJ Adkins was barred from applying strict *res judicata* and was instead required to consider only the "principles" of *res judicata* in a non-binding fashion.

As Plaintiff points out, ALJ Adkins incorrectly stated that he was bound by the previous ALJ's RFC determination. (Doc. #7-2, *PageID* #41). Specifically, ALJ Adkins explained:

> Regarding the residual functional capacity assessment in ALJ Kenyon's prior decision, the Administration cannot make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act, unless new and material evidence or changed circumstances provide a basis for a different finding concerning a claimant's residual functional capacity (Acquiescence Ruling 98-4(6); *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997)). In this case, [Plaintiff] has not produced new and material evidence documenting a significant change in her condition during the period at issue (June 27, 2019 through the Title II date last insured of September 30,

> 2019). Thus, ALJ Kenyon's prior residual functional capacity determination is found to be binding and is adopted herein (as explained at Finding No. 5). The overall finding pertaining to [Plaintiff]'s ability to do past relevant work made in the prior final and binding decision also is applicable, and therefore, is adopted herein pursuant to AR 98-3(6) and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990)) (see Finding No. 6).

*Id.*

Plaintiff contends that ALJ Adkins reversibly erred by using the wrong legal standard. (Doc. #8, *PageID* #865). According to Plaintiff, "While ALJ Adkins provided a review of the newly submitted evidence, he did so against the backdrop of ALJ Kenyon's prior findings, framing his review of the evidence as a question of whether it supported a departure from the prior ALJ's RFC." *Id.*

  **B. Post-*Earley***

Since Plaintiff filed her Statement of Errors, the Sixth Circuit has issued two unpublished opinions relevant to her arguments. In *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662 (6th Cir. Mar. 20, 2024), the Sixth Circuit examined whether the ALJ treated his review of the new disability application as if he were bound by the prior disability application, thereby denying the claimant the "fresh look" *Earley* requires. The Court of Appeals determined that where an ALJ engages in an in-depth review and analysis of (1) the new evidence related to the claimant's current claim period, and (2) the evidence and findings from the prior decision, *Earley's* "fresh look" is satisfied. *Id.* at *4. The Court of Appeals found that "it is the responsibility of the ALJ reviewing the claim for the later unadjudicated period to determine how much weight to

7

accord both the prior decision and any newly submitted evidence; this includes the effect of a new regulatory threshold, if applicable." *Id*.

The Sixth Circuit also rejected the argument that it is improper for the subsequent ALJ "to measure the new medical evidence 'against the backdrop' of the prior RFC finding instead of assessing the new evidence on its own merits." *Id.* at *6 (citing *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio Mar. 8, 2023)). The Court of Appeals found "it is perfectly acceptable for a subsequent ALJ to presume the accuracy of a prior finding," for this promotes "finality, efficiency, and consistent treatment of like cases." *Id.* The Court explained,

> [T]he suggestion that an ALJ considering a subsequent application should not evaluate a claimant's new records for evidence of a significant change in relation to a prior valid finding strikes us as an overly broad reading of *Earley*. Presuming accuracy is not the same as treating prior findings as binding.

*Id.*

A few months later, in *Gooden v. Comm'r of Soc. Sec.*, No. 23-3927, 2024 WL 2830817 (6th Cir. June 4, 2024), the Sixth Circuit again considered whether the second ALJ failed to give the claimant's second application an independent "fresh look" when the ALJ stated she "must adopt" the first ALJ's RFC unless "there is new and material evidence or changed circumstances" or "there has been a change in the relevant law." *Id.* at *3. The Court cited to *Dennis D.* as highly persuasive and fully consistent with *Earley* and again rejected the notion that it was error for the second ALJ to use the first ALJ's determinations as a starting point.

> [I]f the new application covers a new time period, the second ALJ *may* abide by the first ALJ's determinations as long as the claimant has failed to present "evidence of a change in condition" or satisfy

8

> a "new regulatory threshold." [*Earley*, 893 F.3d at 932]. This makes sense because, in such a case, "[n]othing ha[s] changed between the end of the first application and the beginning of the second one."

*Id.* at *4 (quoting *Earley*, 833 F.3d at 932).

As in *Dennis D.*, the *Gooden* Court explained that a reviewing court should look beyond "rote language" to examine the ALJ's actual analysis:

> [O]n appeal, we need determine only whether the second ALJ *actually* afforded the new application a "fresh look" under *Earley*, notwithstanding rote recitation of a legal standard suggesting otherwise. Despite Gooden's assertion that we "must reverse" if the ALJ applied an incorrect legal standard, *Earley* requires remand only when the judge *actually applied* incorrect res judicata principles. So under our precedent, the key question is whether the second ALJ treated review of the new application "as if" they were "bound by the prior decision." If not, then she did not reversibly err.

*Id.* (internal citations omitted).

In short, the Sixth Circuit confirmed that to determine whether an ALJ's recitation of the "bound by" language constitutes harmless error or supports reversal requires close examination of the record. *Id.* at *4. In *Gooden*, reversal was not warranted because the second ALJ fully considered all new evidence, medical records, and medical episodes from the period that postdated the prior denial. In fact, the second ALJ expressly found "new and material evidence" that supported a departure from the prior findings. "[R]egardless of whether the second ALJ recited a standard indicating she might be bound in other cases, in *this* case she expressly rejected the first opinion's findings and went on to make an independent assessment of Gooden's claim." *Id.* at *5. Therefore, the "'real finding' ... was a fresh one, regardless of the standard the ALJ recited at the beginning of her opinion." *Id.* *Gooden* emphasized "[t]he depth of the judge's reasoning"

9

including that: (1) the second ALJ "stated anew" the five sequential steps required to determine disability; (2) the second ALJ found slightly different impairments at Step Two; (3) the second ALJ "balanced new testimonial evidence that Gooden provided … against other medical evidence"; and (4) the second ALJ "focused on medical evidence from the period after the first decision" and "factored in scores of new datapoints," which resulted in new RFC limitations. *Id.*

### C. ALJ Adkins' Analysis

In this case, ALJ Adkins specifically states that he "adopted" ALJ Kenyon's RFC determination. (Doc. #7-2, *PageID* #41). However, "the fact that a second ALJ adopts the same RFC findings as a prior ALJ, standing alone, does not violate *Earley* because it says nothing about <u>how</u> the ALJ reached that decision." *Braden G. v. Comm'r of Soc. Sec.*, No. 2:23-CV-2626, 2024 WL 3324876, at *9 (S.D. Ohio July 8, 2024), *Report and Recommendation pending*; *see also Tammy T. v. Comm'r of Soc. Sec.*, No. 1:22-CV-248, 2023 WL 3432299, at *6 (S.D. Ohio May 13, 2023) (finding that although the ALJ adopted the prior ALJ's mental RFC, the ALJ did not err because he thoroughly reviewed all the evidence and concluded that the new evidence did not establish greater mental limitations than those found in the prior RFC). After all, "the second ALJ *may* abide by the first ALJ's determinations as long as the claimant has failed to present "evidence of a change in condition" or satisfy a "new regulatory threshold." *Gooden*, 2024 WL 2830817, at *4 (quoting *Earley*, 893 F.3d at 932).

Here, ALJ Adkins' analysis confirms that he took a "fresh look" at all relevant evidence before he determined that Plaintiff's mental and physical limitations had not changed since June 2019. Like in *Gooden*, ALJ Adkins began his decision by stating anew the five sequential steps he was required to determine. (Doc. #7-2, *PageID* #s 42-43). Also like *Gooden*, he found slightly

different severe impairments at Step Two. ALJ Kenyon found that Plaintiff had three severe impairments: "residuals of West Nile encephalitis; an anxiety disorder; and a depressive disorder." (Doc. #7-3, *PageID* #97). In contrast, ALJ Adkins found that she had six: "residuals of West Nile Virus, migraines, occipital neuralgia, anxiety, depression, and posttraumatic stress disorder (PTSD)." (Doc. #7-2, *PageID* #44).

ALJ Adkins' "fresh look" is also present at Step Three of the disability analysis. Previously, ALJ Kenyon only assessed whether Plaintiff's mental impairments met or medically equaled the criteria of Listings 12.04 and 12.06. (Doc. #7-3, *PageID* #s 98-99). Conversely, under the current application, ALJ Adkins also assessed Plaintiff's physical impairments under any Listing in Section 11.00, *et seq.,* and her migraines under Listing 11.02 pursuant to Social Security Ruling ("SSR") 19-4p, in addition to her mental impairments under Listings 12.04, 12.06, and 12.15. (Doc. #7-2, *PageID* #s 49-50). While ALJ Adkins ultimately found that none of Plaintiff's impairments singly or in combination met or medically equaled a listing, his assessment of multiple listings that were not considered by ALJ Kenyon supports a finding that he provided a fresh review of the evidence.

Further support that ALJ Adkins provided an independent "fresh look" is demonstrated by his thorough review of the new evidence contained in the record that did not exist at the time of ALJ Kenyon's decision. Notably, as both the ALJ and Commissioner correctly point out, there is only a small (96-day) period at issue in this case—June 27, 2019, through Plaintiff's date last insured, September 30, 2019. (Doc. #7-2, *PageID* #46); (Doc. #10, *PageID* #882). During that short period of time, Plaintiff sought treatment one time, on September 24, 2019. (Doc. #7-7,

11

*PageID* #s 615-17).  Nevertheless, ALJ Adkins considered all of the medical records and opinion evidence, including those after Plaintiff's date last insured.

Looking first at Plaintiff's mental impairments, ALJ Adkins provided an in-depth analysis of Plaintiff's treatment records when assessing the severity.  ALJ Adkins noted, for example, that treatment records from September 2019 through April 2022 showed that Plaintiff presented with intact recent and remote memory, intact fund of knowledge, normal speech and language skills, and unremarkable though processes.  (Doc. #7-2, *PageID* #48) (citing, in part, Doc. #7-7, *PageID* #s 469, 477, 481, 546, 556, 558, 581, 585, 600).  He also found, based on treatment notes from March 2017 and July 2022 that Plaintiff "retained some ability to conform her behavior to socially acceptable standards even during bout of increased depression and/or anxiety."  *Id.* (citing Doc. #7-7, *PageID* #s 581; Doc. #7-8, *PageID* #694).  Indeed, records from March and April 2018 indicate that Plaintiff was able to maintain relationships with some family and friends, especially when she refrained from alcohol use.  *Id.* (citing Doc. #7-7, *PageID* #s 513, 518).  The ALJ recognized that although there are examination findings of reduced concentration at appointments between 2020 and 2022, there are also records from approximately the same time period describing normal attention span and concentration.  *Id.* at 49 (citing Doc. #7-7, *PageID* #s 460-85, 542-47, 556-639).  ALJ Adkins further observed that Plaintiff discontinued psychotherapy services in June 2019 and did not resume therapy until November 2021.  *Id.* at 45 (citations omitted).

ALJ Adkins also addressed the new medical opinions of record.  He first considered a new neuropsychological examination, which was performed by James Gilchrist, Ph.D., in February 2021.  (Doc. #7-2, *PageID* #s 45-46) (citing Doc. #7-7, *PageID* #s 486-90).  ALJ Adkins found Dr. Gilchrist's opinion to be "only somewhat persuasive" because he did not provide any specific

12

functional limitations and "his conclusion that [Plaintiff's] cognitive impairments date back to her remote West Nile diagnosis seems to be largely based upon speculation given that some of those complaints are not entirely supported by other treatment records." *Id.* at 46. ALJ Adkins also discussed the April 2022 assessment submitted by Plaintiff's therapist, Sarah Zinn, LISW-S. *Id.* at 47 (citing Doc. #7-7, *PageID* #s 548-51). Although the ALJ noted that Ms. Zinn imposed no more than moderate functional limitations, he concluded that her opinion "cannot be considered as persuasive" because Ms. Zinn had only treated Plaintiff three times since November 2021, two years after the relevant period. *Id.* In addition, ALJ Adkins considered the April 2022 opinion provided by Plaintiff's primary care provider, Jennifer Williams, M.D. *Id.* at 46-47 (citing Doc. #7-7, *PageID* #s 552-55). The ALJ found Dr. Williams' opinion to be "somewhat persuasive," noting that there were no treatment records during the relevant period at issue "which would support imposing such extensive limitations." *Id.* at 46. But, the ALJ noted, "Dr. Williams has treated [Plaintiff] since September 2019 and acknowledges that [Plaintiff] - who initially presented to her as overmedicated - is stable to perform both daily living activities and instrumental daily living activities after adjustments to her medication regimen were made which seems consistent with more recent mental health progress notes from Ms. Zinn that indicate Plaintiff's functional status is no more than moderately impaired …." *Id.* at 46-47.

Finally, ALJ Adkins considered the opinions of the record-reviewing psychologists, Jennifer Swain, Psy.D., who reviewed Plaintiff's records in July 2021, (Doc. #7-3, *PageID* #s 126-32), and Karla Delcour, Ph.D., who reviewed Plaintiff's file upon reconsideration on November 24, 2021 (Doc. #7-3, *PageID* #s 138). Dr. Swain and Dr. Delcour adopted the prior mental RFC findings of ALJ Kenyon, pursuant to AR 98-4, essentially opining that Plaintiff is "limited to

performing unskilled simple repetitive tasks, occasional contact [with] coworkers & supervisors, no public contact, no fast paced production work or jobs which involve strict production quotas, limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next and no occupational exposure to alcohol. *Id.* at 129, 138. ALJ Adkins found the assessments of Drs. Swain and Delcour persuasive.[4] (Doc. #7-2, *PageID* #47). He agreed that no new and material evidence has been presented since the issuance of the prior decision through the date last insured to show significant change (i.e., deterioration) in Plaintiff's mental status. *Id*. The ALJ specifically noted that during the relevant period, Plaintiff's mental health treatment was limited to medication refills, "which clearly have been of some benefit especially given subsequent reports that anxiety/depressive symptoms do not interfere with activities of daily living." *Id.* (internal citations omitted) (citing Doc. #7-7, *PageID* #s 580, 594; Doc. #7-8, *PageID* #747). The ALJ further explained that Dr. Swain's and Dr. Delcour's opined limitations were reasonable given Plaintiff's complaints of difficulty with concentration and memory, her complaints of a propensity toward mood/behavior disturbances and panic attacks, and her diminished stress tolerance. *Id.*

Plaintiff urges this Court to reverse because the Dr. Swain and Dr. Delcour allegedly failed to take a sufficient "fresh look" at the evidence before adopting the prior mental RFC findings. But even if the agency consultants did not sufficiently review the record for evidence of changes in Plaintiff's mental RFC,[5] that failure would constitute harmless error because substantial

---

[4] Notably, although the ALJ found these opinions to be persuasive, during the hearing, ALJ Adkins recognized that Plaintiff's claim was denied on initial review and reconsideration. However, he stated, "I've reviewed the entire record; I'm in no way bound by those previous determinations. It's my job to take what's in the record now, combine that with what we talk about today, and then render my own independent conclusion." (Doc. #7-2, *PageID* #67).

[5] Although both Dr. Swain and Dr. Delcour stated they adopted the prior RFC findings (Doc. #7-3, *PageID* #s 132,

evidence supports ALJ Adkins' conclusion that their opinions are persuasive. *See Gooden,* 2024 WL 2830817, at *6 (concluding that the ALJ did not err in finding opinions of state agency consultants who adopted prior ALJ's RFC persuasive when substantial evidence supports the ALJ's finding).

Finally, despite the ALJ's statements to the contrary, his determination of Plaintiff's mental RFC and explanation demonstrate that he undertook a fresh review. When determining Plaintiff's mental RFC, the ALJ explained how his prior findings that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself translate into specific functional limitations:

> [Plaintiff] could perform only unskilled, simple, repetitive tasks with no fast- paced production work or jobs which involved strict production quotas. These restrictions account for any psychological symptoms or cognitive deficits that could have potentially hindered [Plaintiff's] ability to attend for long periods or carry out detailed tasks. Job duties or the work routine should have involved very little, if any, change from one day to the next to account for the possibility that stress may have exacerbated mental health symptoms. [Plaintiff] should have had no occupational exposure to alcohol to avoid disrupting her sobriety. She also required an occupation with no more than occasional contact with supervisors and coworkers and could not have contact with the public. These restrictions have been imposed to accommodate [Plaintiff's] social aversion complaints and reduce the possibility of any social functioning difficulties during bouts of symptom exacerbation.

---

141), they each reviewed medical records dated after the prior decision. (Doc. #7-3, *PageID* #s 127-28, 137). Dr. Delcour concluded, "Prior administrative findings at the initial level are supported by the available evidence. There are no new or worsening allegations at the recon[sideration] level and no new [medical evidence of record] to support changes to the initial [mental] RFC." *Id.* at 141. Only after independently reviewing Plaintiff's records, including those that post-dated the prior ALJ's decision, did both doctors state they were adopting the prior RFC. This appears to comply with the "fresh review" requirement of *Earley*.

*Id.* at 52.

In adopting ALJ Kenyon's mental RFC, ALJ Adkins did not err because he thoroughly reviewed all the evidence and concluded that the evidence did not establish greater mental limitations than those found in the prior RFC. Moreover, like the claimant in *Dennis D.*, Plaintiff does not point to any evidence that would support greater limitations than those found by ALJ Adkins. *Dennis D.*, 2024 WL 1193662, at *7; *see also Krista L. v. Comm'r of Soc. Sec.*, No. 3:23-CV-144, 2024 WL 1596323, at *6 (S.D. Ohio Apr. 12, 2024) (noting that aside from citation to the pre-*Earley* legal standard, the plaintiff had not pointed to any evidence of record that the ALJ failed to consider).

Turning to Plaintiff's physical impairments, ALJ Adkins also reviewed the updated medical records and gave a "fresh look" as required by *Earley*. ALJ Adkins discussed Plaintiff's history of West Nile Virus and her complaints of chronic fatigue, behavioral changes, mood problems, and range of residual neurologic and cognitive deficits. (Doc. #7-2, *PageID* #s 44-45) (citations omitted). He noted that in November 2020, Plaintiff was hospitalized overnight for "a syncopal and collapse event with acute chronic cognitive impairment/confusion." *Id.* at 45. However, he concluded that this event was largely precipitated by Plaintiff's excessive alcohol use, noting that lab work, imaging, and physical examination findings at discharge were all unremarkable. *Id.* (citing Doc. #7-7, *PageID* #s 384-85). ALJ Adkins observed that since ALJ Kenyon's decision, aside from the hospitalization, Plaintiff "has been followed on an outpatient basis for medication management of headaches that are most consistent with bilateral occipital neuralgia which seems to have developed after encephalitis." *Id.* (citing Doc. #7-7, *PageID* #s 460-85, 542-47, 562-639). However, the ALJ noted that there has been no acute pathology to

16

account for Plaintiff's alleged neurological deficits and findings of motor/coordination, cranial nerves, and gait and stance have all been normal. *Id.* (citing Doc. #7-7, *PageID* #s 469, 546).

At Step Four, although ALJ Adkins indicated that he adopted ALJ Kenyon's RFC, he did not adopt his physical RFC in its entirety. Unlike ALJ Kenyon, who found that Plaintiff could perform "a full range of work at all exertional levels" with non-exertional limitations, (Doc. #7-3, *PageID* #99), ALJ Adkins found that Plaintiff could perform medium work subject to the same non-exertional limitations (Doc. #7-2, *PageID* #51). *See Dennis D.,* 2024 WL 1193662, at *5 (finding that similarities between the prior ALJ's RFC and the current ALJ's RFC do not have bearing on whether the current ALJ applied the correct standard).

In assessing Plaintiff's physical RFC, the ALJ found the opinions of state agency physicians, Gerald Klyop, M.D., and Gail Mutchler, M.D., to be persuasive. Dr. Klyop, who reviewed Plaintiff's records in August 2021, and Dr. Mutchler, who reviewed them in December 2021, adopted the prior RFC findings of ALJ Kenyon, pursuant to AR 98-4. (Doc. #7-3, *PageID* #s 131-32, 140-41). The ALJ noted there was no new and material evidence documenting a significant change in Plaintiff's physical condition through the date last insured. (Doc. # 7-2, *PageID* # 52). Indeed, ALJ Adkins reviewed the examination findings from the relevant period which showed that Plaintiff's clinical findings were normal, specifically noting:

> Physical examination findings around the relevant period (and thereafter) show that [Plaintiff] ambulates independently with normal gait and station and normal coordination including normal finger-to-nose and no drift. Muscle tone and strength of the bilateral upper and lower extremities is normal. [Plaintiff] remains neurologically intact with no sensory or reflex deficits. Respiratory efforts are normal, and heart rate and rhythm is regular (Exhibits B3F / B9F / B13F). A chest x-ray has been nonacute and CT scans taken of [Plaintiff]'s head and neck have been negative for evidence

> of hydrocephalus or acute intracranial or arterial stenosis findings (Exhibit B2F at 26-27). EKG findings have been normal (Exhibit B2F at 41).

*Id.* at 52. Based on these normal examination findings, the ALJ concluded that "limiting [Plaintiff] to medium work is a reasonable estimation of her physical capacity during the material period at issue." *Id.*

Similar to her mental RFC, Plaintiff does not point to any evidence that would support greater limitations than those determined by ALJ Adkins. *See Krista L.*, 2024 WL 1596323, at *6. To the extent Plaintiff argues that the ALJ erred in finding Dr. Klyop and Dr. Mutchler's opinions persuasive because they failed to take a "fresh look" at the evidence before adopting ALJ Kenyon's physical RFC findings, such error would be harmless.[6] As explained above, ALJ Adkins found that physical examination findings during the relevant time did not document any significant changes in Plaintiff's physical condition and, indeed, were generally normal. Thus, ALJ Adkins' physical RFC finding is substantially supported. *See Gooden*, 2024 WL 2830817 at *5-6; *Dennis D.*, 2024 WL 1193662, at *6.

Thus, in accordance with the Sixth Circuit's further elucidation of *Earley* in *Dennis D.* and *Gooden*, "notwithstanding a rote recitation of a legal standard suggesting otherwise," ALJ Adkins

---

[6] Similarly to the state agency psychologists, although both Dr. Klyop and Dr. Mutchler stated they adopted the prior RFC findings (Doc. #7-3, *PageID* #s 131, 140), they each reviewed medical records dated after the prior decision. (Doc. #7-3, *PageID* #s 127-28, 137). Dr. Mutchler noted that upon review of the initial medical evidence, no new or material changes were identified and, upon reconsideration, no additional information was submitted or obtained. *Id.* at 140. She concluded, "RFC generated based on above in context of totality of evidence in file. The prior administrative findings are reasonable and well supported with adoption of the above referenced ALJ decision." *Id.* Thus, both doctors independently reviewed Plaintiff's records, including those that post-dated the prior ALJ's decision, before they adopted the prior RFC. This appears to comply with the "fresh review" requirement of *Earley*.

"actually afforded the new application a 'fresh look' under *Earley*." *Gooden*, 2024 WL 2830817, at *4 (citing *Dennis D*., 2024 WL 1193662, at *4). By proceeding through the five sequential steps anew, assessing new severe impairments at Step Two, evaluating new listings at Step Three, considering all prior and current medical evidence before adopting the prior mental RFC, and differentiating his physical RFC finding from the prior physical RFC, ALJ Adkins' decision demonstrates that he performed the "fresh look" *Earley* requires. *See* Doc. #7-2, *PageID* #s 40-56; *Gooden*, 2024 WL 2830817, at *4. Therefore, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Statement of Errors (Doc. #8) be **DENIED;**

2. The Commissioner's non-disability finding be **AFFIRMED**; and

3. The case be terminated on the Court's docket.

July 31, 2024  *s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

19

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).